**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARVIN AND CHERI KUSHNER, | ) | |
| on behalf of themselves and a class, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 08-CV-2148 |
| | ) | Judge Conlon |
| ILLINOIS STATE TOLL HIGHWAY | ) | Magistrate Judge Keys |
| AUTHORITY, BRIAN MCPARTLIN, | ) | |
| and MATTHEW BEAUDET, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM**
**IN SUPPORT OF ITS MOTION TO DISMISS**

Defendants, the Illinois State Toll Highway Authority ("Tollway"), Brian McPartlin and Matthew Beaudet, by and through their attorney, LISA MADIGAN, Illinois Attorney General, files this Motion to Dismiss Plaintiffs' Complaint.

The Defendants, hereby move this Court to dismiss the Plaintiffs' Complaint pursuant to F.R.C.P. 12(b), in that the Plaintiffs lack standing and it fails to state a claim upon which relief can be granted. The Tollway has filed a memorandum of law in support of such motion.

WHEREFORE, Defendants, the Illinois State Toll Highway Authority, Brian McParlin, and Matthew Beaudet respectfully request this Honorable Court to dismiss the Plaintiffs' Complaint.

Respectfully submitted this 16th day of June, 2008,

| | |
|---|---|
| | /s/  Victor F. Azar |
| LISA MADIGAN | VICTOR F. AZAR, ARDC # 6203693 |
| Illinois Attorney General | Assistant Attorney General |
| | THOMAS J. BAMONTE |
| | General Counsel |
| | Illinois Tollway |
| | 2700 Ogden Avenue |
| | Downers Grove, Illinois 60615 |
| | (630) 241-6800, extension 1540 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARVIN AND CHERI KUSHNER, | ) | |
| on behalf of themselves and a class, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | 08-CV-2148 |
| | ) | Judge Conlon |
| ILLINOIS STATE TOLL HIGHWAY | ) | Magistrate Judge Keys |
| AUTHORITY, BRIAN MCPARTLIN, | ) | |
| and MATTHEW BEAUDET, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS**

Defendants, the Illinois State Toll Highway Authority ("Tollway"), Brian McPartlin and

Matthew Beaudet, by and through their attorney, Lisa Madigan, Illinois Attorney General, files

this memorandum in support of their Motion to Dismiss Plaintiffs' Complaint.

**BACKGROUND**

The Tollway operates a system of toll highways in Northern Illinois that accepts payment

by cash or electronically.  Electronic toll collection utilizes a windshield-mounted transponder (I-

PASS) that is associated with an I-PASS account to pay for tolls when the vehicle goes through a

toll collection point.[1]  An I-PASS account may contain multiple transponders and multiple

license plates.  I-PASS customers are responsible for keeping current the vehicle identity, license

plate and credit card information pertaining to their accounts.

In order to thwart toll evasion, the Tollway has a Violation Enforcement System that

utilizes digital photography to record the license plate of any vehicle going through a toll

---

[1] Information on the Tollway's I-PASS and toll Violation Enforcement System is posted on the Tollway's
website: http://www.illinoistollway.com.

collection point.  If a license plate is listed with an I-PASS account, the toll is deducted from the account.  If the license plate is not listed with any I-PASS account, the photograph becomes evidence of a toll violation.

I-PASS customers like the Plaintiffs (the "Kushners") enter into an I-PASS Agreement when they get their I-PASS and set up their I-PASS account.  (Exhibit A).[2]  The I-PASS Agreement provides in relevant part:  "If the license plate and plate type is inaccurate *or not listed in your I-PASS account*, the transaction will be treated as a violation."  (Exhibit A, ¶12) (emphasis added).

The Tollway has established an administrative adjudication system for alleged toll violators pursuant to the Toll Highway Act.  605 ILCS 10/10(a-5).  Under the system, suspected toll violators are sent a notice of violation informing the person the "date, approximate time and location of the violations cited" as well as the availability of a hearing to contest the violation. 92 IAC 2520.705 and 2520.705.  The administrative hearing process is before an administrative hearing officer.  92 IAC 2520.725.  At the hearing, the alleged violator can introduce evidence and cross-examine witnesses.  92 IAC 2520.740.  Persons found liable for a toll violation can appeal to the state circuit court in accordance with the Illinois Administrative Review Law, 735 ILCS 5/3-101 *et seq.  See* 605 ILCS 10/10(a-5); 92 IAC 2520.770.

The Kushners allege they were I-PASS customers.  (Complaint ¶ 12).  It can be inferred from the Kushners' Notice of Violation (Exhibit B[3]) ("Notice") and ¶ 12 of the I-PASS Agreement (Exhibit A) that the Kushners failed to register to their I-PASS account the license

---

[2] The Kushners allege that "[s]igning up for I-PASS establishes a contractual relationship between the customer and ISTHA" (Complaint ¶ 10).  This court can consider a contract referenced in a complaint but not attached to that complaint.  *Truhlar v. John Grace Branch No. 825 of the National Association of Letter Carriers*, Not Reported in F.Supp.2d, 2007 WL 1030237.

[3] This is Plaintiffs' Exhibit A.

plate for the vehicle involved in this case.[4]

Since the Kushners were accumulating violations on a vehicle they had failed to register in the Tollway's I-PASS system, on April 3, 2008 the Tollway issued the Notice of Violation (Exhibit B), which stated in relevant part:

> Within 21 days of the issue date of this notice you must either: pay the total due or request a hearing to contest the violations. *If you had a valid I-PASS account in good standing, at the time of the violation, you do not need to schedule a hearing....* If you wish to contest these violations or review all photos and documentation prior to a hearing please call 1-800-824-7277 / 1-630-241-7302 – T.D.D. to schedule a hearing and/or an evidence package review. (Exhibit B) (emphasis added).

The Kushners allege that upon receipt of the Notice on April 10, 2008 (Complaint ¶11) they attempted to contact the Tollway "multiple" times to schedule a hearing by calling the phone number listed on the Notice (*Id.* at ¶ 14). The Kushners filed their Complaint on April 15, 2008, five days after their receipt of the Notice and nine days before the time period in which they had to request a hearing would run (i.e., April 24, 2008).

On April 17, 2008, the Kushners made a written request for a hearing. (Exhibit C). On April 21, 2008, the Tollway sent the Kushners a list of available hearing dates. (Exhibit D). The Tollway recognized that the Kushners were I-PASS customers and proposed to resolve this matter without a hearing by having the Kushners register their unregistered vehicle to their I-PASS account. *Id.* The Kushners responded on April 25, 2008 by requesting the Tollway to register their vehicle to their I-PASS account. (Exhibit E). Pursuant to the request, the Tollway added the vehicle to the Kushners' I-PASS account, deducted the unpaid tolls and dismissed all of the fines referenced in the Notice. (Exhibit F).

---

[4] This is corroborated by the Kushners' request that their license plate be added to their I-PASS account. (Exhibit E).

## ARGUMENT

There are several defects in the Plaintiff's Complaint that warrant dismissal. This court lacks jurisdiction because the Kushners lack standing and the matter is moot. Additionally, their complaint does not allege a viable due process claim (Count I). Furthermore, the two individuals who were acting within their official capacity as Tollway employees should be dismissed. The Kushners' state law claims (Counts II and III) fare no better.

**I.     The Kushners Lack Standing Because They Suffered No Injury**

Plaintiffs lack standing to bring their claims: to have standing "(1) the party must personally have suffered an actual or threatened injury caused by the defendant's allegedly illegal conduct, (2) the injury must be fairly traceable to the defendant's challenged conduct, and (3) the injury must be one that is likely to be redressed through a favorable decision." *Sanner v. Board of Trade of City of Chicago*, 62 F.3d 918, 922 (7th Cir.1995) *quoting Valley Forge Christian Coll. v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982). *See also Kochert v. Greater Lafayette Health Services, Inc.,* 463 F.3d 710, 714 (7th Cir. 2006); *U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 627 (7th Cir.2003).

In this case, the Kushners cannot establish any actual or threatened injury from the Tollway's alleged conduct. Within the 21-day period the Notice provided the Kushners to request an administrative hearing, the Tollway (a) acknowledged the Kushners' request for an administrative hearing; (b) provided them a list of available hearing dates and (c) the Tollway also outlined for the Kushners how they could clear the alleged violations by simply registering their vehicle to their I-PASS account. (Exhibit D). When the Kushners authorized that registration, the Tollway dismissed the violations. (Exhibit E). The Kushners thus paid no fine

or other penalty.  No judgment was entered against them.  Neither their vehicle registration nor their driver's licenses were revoked.

The "multiple" calls the Kushners allegedly made over a five day period to the Tollway's call center without reaching a live operator is not an "injury" for Article III purposes.  Call center glitches are an unfortunate feature of modern life and do not rise to the level of a constitutional deprivation.  It is undisputed that the Tollway provided the Kushners with the opportunity for an administrative hearing and then dismissed the violations the Kushners had accumulated as a result of their failure to register their vehicle to their I-PASS account prior to any hearing or judgment.

The Kushners suffered no injury and thus lack standing.

## II.    The Complaint is Moot and Should be Dismissed

A case becomes moot when a plaintiff's personal interest in the outcome of the lawsuit comes to an end before the termination of the litigation.  *Gates v. Towery*, 430 F.3d 429 (7th Cir. 2005).  Even if the Kushners suffered an Article III injury, their complaint was rendered moot when the Tollway offered them an administrative hearing, pointed out that such a hearing was unnecessary because the Kushners could clear their toll violations by adding their license plate to their I-PASS account, and then dismissed the toll violations when the Kushners registered their vehicle.

Since the Kushners were given their requested relief and more, they have not suffered any injury that would be redressable by a judicial determination.  *Grant ex rel. Family Eldercare v. Gilbert*, 324 F.3d 383, 389 (5th Cir. 2003).  "As a general rule, a purported class action becomes moot when the personal claims of all named plaintiffs are satisfied and no class has been properly certified."  *Id. (quotation omitted).  See also Bertrand ex rel. Bertrand v. Maram*,

495 F.3d 452, 455 (7th Cir. 2007); *Board of School Commissoniers of Indianapolis v. Jacobs*, 420 U.S. 128, 129 (1975).

With the Tollway's dismissal of the toll violation against the Kushners, the Kushner have no current claim against the Tollway and the Tollway has no current claim against them.  Now that the Kushners have registered their vehicle to their I-PASS account, there is no reasonable likelihood that they will be charged with another toll violation.  Therefore, this case is moot and should be dismissed.

### III.    The Kushners have Not Stated a Viable Due Process Claim

In Count I, the Kushners allege that the form of the Tollway violation notices and the busy phone lines they encountered violated their rights to due process under the 14th Amendment of the United States Constitution.   In order to state a procedural due process claim, "a plaintiff must allege (1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation."  *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996). The Kushners have done neither.

#### A.  The Tollway Did Not Deprive the Kushners of Any Protected Interest

As established in Part I, the Kushner were not deprived of a protected property or a liberty interest.  The Kushners never had to pay any fine.  Their driving rights and privileges were not affected.  They were never denied the opportunity to drive on the Tollway.  The Tollway offered them a full administrative hearing, but that hearing was unnecessary because the Tollway dismissed the violations against the Kushners after they registered their vehicle to their I-PASS account.

The difficulty the Kushners may have had in reaching an operator at the Tollway's call center did not deprive them of any protected constitutional interest.  Inconvenience and

irritations in connection with a hearing process—e.g., lengthy forms to fill out, inconvenient times for a hearing, long lines, hearing locations at some distance from a citizen's residence—do not give rise to a constitutional due process claim by themselves. See *Crawford v. Marion County Election Bd.*, 128 S.Ct. 1610, 1612 (2008.) (Because Indiana's cards are free, the inconvenience of going to the Bureau of Motor Vehicles, gathering required documents, and posing for a photograph does not qualify as a substantial burden on most voters' right to vote, or represent a significant increase over the usual burdens of voting.) See also, *Campbell v. Miller*, 787 F.2d 217, 229 ( 7th Cir. 1986) (Standing alone, reasonable delay and inconvenience do not rise to the level of a constitutional deficiency.) If such inconveniences were actionable, then every customer service shortcoming of a public agency could give rise to a federal lawsuit.

The Kushners' claims in this regard are particularly weak. At the time the Kushners received the Notice, they had 14 days to request a hearing from the Tollway.[5] The Kushners, however, stopped trying to reach the Tollway's call center after only 5 days, opting instead to file their federal lawsuit with 9 days remaining to request an administrative hearing. It is well established that a party "cannot create a due process claim by ignoring established procedures." *Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004).

We will never know if the Kushners would have reached an operator at the Tollway's call center had they called again during the remaining 9 days instead of filing their lawsuit. What is undisputed is that within that period the Tollway offered the Kushners an administrative hearing. The Kushners never had to go through the hearing, however, because the Tollway dismissed their violations when they registered their vehicle to their I-PASS account.

---

[5] The Notice provided the Kushners 21 days from the date of issuance of the notice (April 3, 2008) to either request a hearing or pay the fines. The Kushners allege they received the Notice on April 10, 2008 (Complaint ¶ 11), which left them 14 days, until April 24, 2008, to act. They filed their Complaint on April 15, 2008, 5 days after they received the Notice and 9 days before their time to request a hearing had run.

Likewise, the Kushners' claim that the Notice was not sufficiently clear that alleged violators could request a hearing in writing does not bear scrutiny. In fact, despite the alleged "unclear notice" the Kushners did request a hearing in writing (Exhibit C) and the Tollway provided them an opportunity for a hearing (Exhibit D). Having received what they were seeking—an opportunity for a pre-deprivation hearing and ultimately full dismissal of all their toll violations—the Kushners were not deprived of any protected interest.

It is important to note that the Kushners do not challenge the adequacy of the Tollway's administrative hearing process. Nor could they. The courts have granted administrative agencies flexibility in establishing notice and hearing procedures "and it is a feature that courts must be reluctant to curtail." *Citizens Awareness Network, Inc. v. U.S.*, 391 F.3d 338, 355 (1st Cir. 2004).

The Tollway utilizes a standard written notice that advises motorists of the date, time and location of the alleged toll violation along with information about the nature of the administrative hearing proceeding, how to request a hearing by calling an 800 number and the consequences of not responding. (Exhibit B). This is exactly what is required by statute and by regulation. *See* 605 ILCS 10/10(a-5); 92 Ill. Adm. Code 2520.705. The Tollway provides alleged toll violators an impartial hearing officer, access to the evidence against them, and an opportunity to call and cross-examine witnesses. 605 ILCS 10/10(a-5); 92 Ill. Adm. Code 2520.770. This process is constitutionally adequate. *See, e.g., Van Harken v. City of Chicago*, 103 F.2d 1346 (7th Cir. 1997) *cert. denied* 520 U.S.2d 1241 (1997) (upholding administrative hearing process for parking tickets).

**B.     The Illinois Administrative Review Law Provided the Kushners with All The Process They Were Due**

The relevant question for the Kushners' due process claim is "whether sufficient state-

law protection exists, not whether sufficient protections were afforded." *Michalowicz v. Village of Bedford Park*, (--- F.3d ---, 2008 WL 2357104, p. 3 (7th Cir. 2008).  Here, there were sufficient protections in place even if we assume—contrary to the undisputed record—that the Tollway deprived the Kushners of an administrative hearing.

Although the Kushners allege they attempted to reach the Tollway's call center, they only tried for 5 days out of the 14 days they had to call the Tollway and schedule a hearing.  At the time they filed their complaint there was still over a week left for them to call and reach someone to either schedule a hearing or resolve their I-PASS account problems.  It is undisputed, however, that the Tollway did offer the Kushners an opportunity to have a hearing; an opportunity that the Kushners decided not to exercise once they realized that the Tollway would dismiss all their violations once they registered their vehicle to their I-PASS account.

Even if we put aside this undisputed record and assume that the Kushners never would have reached the Tollway's call center and/or the Tollway would have rebuffed the Kushners' written requests for a hearing, they still cannot prevail on their due process claim.  Had the Tollway arbitrarily entered a final order of liability against the Kushners, the Kushners had a right to an independent judicial review of that order in Illinois Circuit Court under the Illinois Administrative Review Law ("ARL"), 735 ILCS 5/3-101 *et seq.  See also* 605 ILCS 10/10(a-5); 92 Ill. Adm. Code 2520.770.

The availability of administrative review by an independent judicial tribunal gave the Kushners all due process to which they were entitled. *Michalowicz,* at  p. 1 .  The ARL grants the Circuit Court "the power to make any order that it deems proper for the amendment, completion or filing of the record of the proceedings of the administrative agency."  735 ILCS 5/3-111(a)(2). It further allows the reviewing court to remand the cause for *de novo* or further hearings,

evidence or proceedings. *Jones v. Board of Fire and Police Com'rs of Village of Mundelein*, 127 Ill.App.3d 793, 800 (2nd Dist. 1984).

The ARL thus allows the court to reverse and remand for an evidentiary hearing when a state agency fails to schedule a hearing and rules against a party. *Niles Tp. High School Dist. 219, Cook County v. Illinois Educational Labor Board,* 369 Ill.App.3d 128, 136 (1st Dist. 2006). In this case, if the Kushners had been unable to get a hearing because of their inability to get through to the Tollway call center or if the Tollway failed to respond to their written request for a hearing, they would still have the right to judicial review of any order entered against them.

The federal courts will "not reject [a state-law remedy as inadequate] unless the remedy can readily be characterized as inadequate to the point that it is meaningless or nonexistent and, thus, in no way can be said to provide the due process relief guaranteed by the fourteenth amendment." *Michalowicz*, at p. 4, *citing Easter House v. Felder*, 910 F.2d 1387, 1406 (7th Cir. 1990)(bracketed material in original). The *Michalowicz* Court found that the ARL "authorizes review in state court and permits either remand for rehearing or outright reversal of administrative decisions that are unsupported by the evidence or legally defective." *Id*. at p. 1.

In *Michalowicz,* the plaintiff alleged that his pre-termination hearing was procedurally defective because it failed to give him adequate notice and an opportunity to respond and that the decision makers were biased against him. *Michalowicz* at p. 1 and 3. The Seventh Circuit held that despite the "scenario surrounding his termination … strikes us as troubling," the ALR "provided adequate remedies for the procedural violations Michalowicz alleges, he has failed to state a due process claim." *Id.* at 6.

Likewise, even if the Tollway denied the Kushners a hearing or gave them a grossly unfair hearing, the ARL would have provided the Kushners with a sufficient remedy in the form

of circuit court and, ultimately, appellate court review. *Michalowicz* recently and strongly affirmed the adequacy of the ARL as a check on arbitrary or unreasonable action by a state agency. The Kushners had the ARL available if the Tollway took definitive adverse action against them—which it did not--and thus Count I of their Complaint must be dismissed.

## IV.    The Individual Defendants Should be Dismissed Even if the Kushners Have Alleged a Viable Due Process Claim

Where claims are asserted against an individual public official, the plaintiff must allege that the individual "caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) *quoting Sheik-Abdi v. McClellon*, 37 F.3d 1240, 1248 (7th Cir. 1994). *See also Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987) (Any defendant not alleged to be individually responsible for the violation of constitutional rights should be dismissed).

The Kushners allege that McPartlin is the Tollway's Executive Director and is being sued in his official capacity. (Complaint ¶ 6). They allege that Beaudet is the Tollway's executive in charge of electronic tolling and is being sued in his official capacity. (Complaint ¶ 7). All the other allegations identify the Tollway as the only actor. As there are no allegations that either McPartlin or Beaudet were personally involved in the alleged constitutional violations, they should be dismissed from this lawsuit.

## V.  The State Law Claims Should be Dismissed as Well

If the Court dismisses Count I, the only remaining counts deal exclusively with state law questions and should be dismissed without prejudice. See, *Saukstelis v. City of Chicago*, 932 F.2d 1171 (7th Cir. 1991).

Counts II and III fail to state a cause of action in any event. First, the Kushners lack

standing to bring the state law claims for the same reasons they lack standing to bring their

federal claim.   See, *In re Estate of Wellman*, 174 Ill.2d 335, 344 (1996).   Second, the Kushners'

state law claims were mooted when the Tollway dismissed their violations after they registered

their vehicle to their I-PASS account.   See, *In re Robert S.,* 213 Ill.2d 30, 45 (2004);  *Katherine*

*M. v. Ryder*, 254 Ill.App.3d 479, 486 (1st Dist. 1993).

The Kushners allege in Count II that the Tollway's violation notices do not comply with

statutory and regulatory requirements, citing Toll Highway Act, 605 ILCS 10/10(a-5), (¶ 34) and

the implementing rules, 92 Ill. Adm. Code 2520.705, (¶ 35). There is no indication, however,

that the General Assembly intended to provide a private cause of action separate and apart from

the cause of action arising under the ARL that it did provide.  When the General Assembly

specifically prescribes a remedy—here the ARL—a court should not lightly imply the existence

of a distinct cause of action for which there is no textual support.

A comparison of the Toll Highway Act and the accompanying rules with the Notice

indicate that the Tollway has complied with the legal requirements. The Notice was sent First

Class Mail to the address of the registered owner of the car, it contained a statement that the

Kushners had an opportunity for a hearing and it provided a toll free number to receive inquiries.

Therefore, Count II should be dismissed.

In Count III the Kushners allege a violation of the contract between the Tollway and its I-

PASS customers "pursuant to which the customer is entitled to use the Tollway system for the

posted tolls."  (Complaint ¶ 38).  Under Illinois law, a complaint alleging breach of contract must

allege that the plaintiff performed its contractual obligations.  *Falcon Associates, Inc. v. City of*

*O'Fallon, Ill.*, 867 F.Supp. 778, 780-781 (S.D.Ill., 1994) *citing Martin-Trigona v. Bloomington*

*Fed. Sav. & Loan Ass'n,* 101 Ill.App.3d 943, 946 (1st Dist.1981); *see also Derson Group Ltd. v.*

*Right Mgt. Consultants, Inc.*, 683 F.Supp. 1224, 1230 (N.D.Ill.1988).

The I-PASS Agreement required the Kushners to provide updated information about their vehicles as a condition of using the Tollway system and paying their tolls electronically. (Exhibit A, ¶'s 2-4, 12).  The Kushners fail to allege that they complied with the terms of the I-PASS Agreement.  We know that the Kushners will be unable to make such an allegation because they added their vehicle to their I-PASS account in order to clear the violations giving rise to this lawsuit.

Count III should be dismissed because the Kushners failed to perform their contractual obligation to register their vehicles to their I-PASS account and the Tollway in dismissing the Kushners' violations was more generous to them than the I-PASS agreement required.

WHEREFORE, for the reasons discussed above, the Defendants, the Illinois State Toll Highway Authority, Brian McPartlin and Matthew Beaudet respectfully request this Honorable Court to dismiss the Plaintiffs' Complaint.

Respectfully submitted this 16th day of June, 2008,


LISA MADIGAN
Illinois Attorney General

/s/  Victor F. Azar____
VICTOR F. AZAR, ARDC # 6203693
Assistant Attorney General
THOMAS J. BAMONTE
General Counsel
Illinois Tollway
2700 Ogden Avenue
Downers Grove, Illinois 60615
(630) 241-6800, extension 1540

Exhibit A

# I-PASS Agreement

Under the terms of this Agreement, the Illinois State Toll Highway Authority (Tollway) will provide you with an I-PASS transponder (I-PASS).

## I-PASS REGISTRATION

1.      A license plate may not be registered to or utilized with any I-PASS account if the person to whom the license plate was registered has been adjudicated liable for utilizing the Tollway without the payment of the proper toll and there remains a balance for unpaid tolls, fines, and/or other fees in connection with such adjudication.

2.      No person may open or utilize an I-PASS account or associated toll collection services if that person has been adjudicated liable for utilizing the Tollway without the payment of the proper toll and the person has unpaid tolls, fines and/or other fees in connection with such adjudication.

3.      Use of an I-PASS by a person, or the license plate registered to that person, who has been adjudicated liable for utilizing the Tollway without the payment of the proper toll and who failed to pay the resulting fine shall be deemed a toll violation subject to full enforcement measures and sanctions provided by law.

4.      Failure to supply accurate information on an application for an I-PASS account shall be grounds for suspension or termination of that account.

## TERMS OF AGREEMENT

5.      **You agree to:**

1.      **Obey all applicable laws.** The registered owner of a vehicle cited by the Illinois State Police for traffic violations that pose a significant public safety risk occurring within ½ mile prior to a toll collection point, at a toll collection point, or within ½ mile beyond a toll collection point will be suspended from the Tollway's I-PASS program for a period of 180 days. The I-PASS suspension shall commence no sooner than 30 days after the citation is disposed of with a finding of guilty and 10 days after the registered owner is supplied a final notice of suspension based on this subsection. The suspension shall apply to all I-PASS accounts registered to the owner of the vehicle who was the subject of the citation. For purposes of this paragraph, traffic violations that pose a significant public safety risk shall be limited to violations of the following Sections of the Illinois Vehicle Code: Sections 6-101

(driving without a valid license or permit), 6-303 (driving on suspended or revoked license), 6-507 (driving a commercial motor vehicle without a valid commercial driver's license), 6-515 (driving under the influence on a CDL), 11-501 (driving under the influence), 11-502 (open alcohol in vehicle), 11-503 (reckless driving or aggravated reckless driving), 11-504 (drag racing), 11-601.5 (driving 40 mph or more over applicable limit), 11-709 (improper lane usage), 11-907 (improper operation near emergency vehicle) and 11-908 (improper operation near or in a construction or maintenance zone).

2.         **Correctly mount and use the I-PASS per instructions provided by the Tollway.** Failure to correctly mount your I-PASS may subject you to toll violation fines, fees and/or suspension of your I-PASS.

3.         **Use your I-PASS only on the vehicle(s) listed** by make, model, and license plate and with the proper number of axles and tires specified on your application.

4.         **Promptly notify the Tollway of changes** in your account name, credit card number and/or expiration dates, financial institution, e-mail or mailing address, vehicle make, model, and year, vehicle registration number, license plate type and number, and/or any other information required to keep your I-PASS account in good standing.

5.         **Accept a rebuttable presumption that your account balance is correct** in the Tollway's electronic records.

6.         **Receive by e-mail information relating to your Account and the Tollway.** The Tollway will not sell or distribute your e-mail address except as required by law.

7.         **Agree to indemnify and hold the Tollway harmless from and against all claims arising from your use of your I-PASS.**

8.         **Not assign or transfer your I-PASS** without the written consent of the Tollway.

6.      **The Tollway disclaims any representation or warranty**, express or implied, including without limitation, any implied or expressed warranty of merchantability or fitness for a particular purpose, with respect to your I-PASS.

7.      **The author of any check written to make a payment pursuant to this agreement and that is returned to the Tollway** unpaid will be subject to a $25 administrative fee. If payment in the amount of the check plus the $25 fee is not received from the customer within 10 days after final notification that the check has been returned and that the administrative fee is being charged, the customer's account will be suspended and all transponders assigned to the account will be deactivated. If your credit card or Electronic

Funds Transfer, ACH or other form of commercially available payment (hereafter "EFT") or charge is disputed or rejected, the Tollway will deduct the corresponding credit from your account.

8. **Your I-PASS will be suspended** if your I-PASS account balance falls below $0.

9. **Illinois law shall govern this Agreement.** Venue for any disputes arising in connection with your I-PASS account or use of your I-PASS transponder shall lie in the Circuit Court of DuPage County, Illinois.

10. **If any term of this Agreement is held invalid,** such invalidity shall not affect the validity of the remaining terms.

11. **The Tollway may change the terms of this Agreement at any time** by sending you an e-mail to the e-mail address you provided the Tollway and by posting a copy of the Agreement on the Tollway website and at the Tollway Customer Care Center. **Use of your I-PASS beginning 10 days after such posting shall constitute your agreement to the terms of the new Agreement.** If you want a written copy of any amendments to the Agreement, you must notify the Tollway in writing and provide a current mailing address.

12. **When your I-PASS is absent from the vehicle, not properly mounted or otherwise does not register a toll payment, a photograph of the vehicle's license plate may be taken and compared with your I-PASS account information.** If the license plate number and plate type is accurately listed in your account, the transaction will be processed as a V-Toll (a Tollway service that debits the toll from your valid I-PASS account when your I-PASS is absent from the vehicle, is not properly mounted or otherwise does not register a toll payment). If the license plate and plate type is inaccurate or not listed in your I-PASS account, the transaction will be treated as a violation.

## DEPOSIT AND ACCOUNT BALANCE

13. **A transponder security deposit, payable to the "Illinois State Toll Highway Authority" is required for each I-PASS.** The security deposit is $10.00 for automatic balance replenishment accounts and $20 for manual replenishment accounts. If your current security deposit is less than these required amounts, an amount equal to the deficiency will be deducted from your account balance and applied to the security deposit. The deposit shall be refunded if you return your I-PASS transponder in good working condition. If your transponder is defaced, altered, damaged or not returned, you will be liable to the Tollway for the full replacement value of the transponder. The Tollway will apply your security deposit and

any remaining balance in your I-PASS account against the replacement cost of the transponder and any other monies you owe to the Tollway. Interest will not be paid on prepaid account balances or deposits.

14.     **A fee equal to the toll charged by the Tollway,** based upon the toll plaza schedule for I-PASS users, will be deducted from your I-PASS account balance each time your I-PASS is used.

15.     **The Tollway may deduct a processing fee no greater than 5%** each time you use your I-PASS to buy goods or services from a non-Tollway vendor that accepts I-PASS. This section does not apply to use of a transponder to pay tolls at other toll agencies that accept I-PASS.

16.     **All single and multi-I-PASS accounts will carry a single account balance (Shared Balance). Your account balance must be maintained** by check, cash, credit card, or EFT by one of the following procedures (as designated in your application):

- **Automatic transponder account replenishment can be done by credit card or EFT.** You agree that when your I-PASS account balance falls below the greater of 10% of your monthly average I-PASS usage or $10.00, your credit card or EFT account will automatically be charged a replenishment amount and your Shared Balance will be increased accordingly. The replenishment amount will be the greater of the average monthly I-PASS account expenditure or $40. **It is your responsibility to ensure that your EFT or credit card information, including expiration dates is current.** If your credit card or EFT issuer allows, the Tollway may obtain any new expiration dates, any new account numbers or other renewal information from your credit card account and use this information to update and replenish your I-PASS account.

- **All other account replenishments must be made by you via:**
  - The Internet at **www.getipass.com**.
  - Purchasing an **I-PASS Gift Card**.
  - Telephone using a credit card charge at **1-800-UC-IPASS**.
  - Sending a check made payable to the Illinois Tollway and **mailed to I-PASS**, P.O. Box 5225, Lisle, IL 60532.
  - The Tollway **Customer Care Center** to pay in person by cash, check or credit card.
  - Utilizing any other Tollway authorized form of payment.

- Oasis locations as posted on the Tollway website.

17.     **If your I-PASS balance falls below $0.00** and a Toll Violation Notice is issued for the unpaid tolls, you will be charged the cash rate for the toll transactions. If a Final Order of Liability is issued and you fail to satisfy the unpaid tolls within the time frame indicated on the Final Order of Liability, the unpaid tolls will be treated as toll violations and all applicable fines, fees and penalties will apply.

18.     **If your I-PASS malfunctions or otherwise becomes inoperable during ordinary use**, the Tollway will replace the device at no charge. However, the Tollway will charge as indicated in above paragraph 13 to replace a transponder that has been damaged, defaced or altered.

### SUSPENSION and TERMINATION

19.     **The Tollway may terminate this Agreement at any time and for any reason.** You may do so as well. If your account is terminated, the Tollway will refund any amount in your I-PASS account remaining after costs and fees have been paid. If your I-PASS account is terminated, the Tollway will send you a Notice of Termination to the last mail or electronic address you provided the Tollway. The Notice will state the reason(s) for the termination and may give you an opportunity to cure within the stated amount of time. If your account is terminated, you agree to return your I-PASS within the time specified in the Notice to the Tollway Customer Care Center in good working condition, normal wear excepted and pay any amounts you owe to the Tollway.

20.     **Your I-PASS is the property of the Tollway,** but will remain in your possession until this Agreement is terminated.

21.     **The Tollway reserves the right to inspect your I-PASS** and may, in its sole discretion, deduct from your account the amount necessary to repair damage.

22.     **If your I-PASS is lost or stolen, you must notify the Tollway immediately.** The Tollway's contact information is included at the bottom of this agreement. You are responsible for all charges on your I-PASS until you notify the Tollway that your I-PASS has been lost or stolen. The Tollway will apply your security deposit to offset the Tollway's cost of replacing the I-PASS and the balance of the replacement cost will be waived. You will be required to pay a security deposit for the new I-PASS. After you pay the security deposit, the Tollway will transfer any remaining balance in your I-PASS account to your new account.

23.    **Your I-PASS account may be suspended** based upon outstanding toll payment violations, failure to pay administrative fees or a violation of Section 5.A of this Agreement.

24.    **I-PASS suspension means** that you may not use your I-PASS while your account is suspended and any attempted I-PASS transactions will constitute toll violations.

### DISPUTES

25.    **All disputes involving your I-PASS account, your I-PASS transponder or the Tollway's electronic toll collection system must be submitted in writing** to the Tollway Customer Care Center within 180 days of notice that a toll, fee, or other charge has been made to your account. You agree that the mailing or emailing to the last mail or electronic address you provided the Tollway constitutes notice to you of the tolls, fees and charges contained therein.

TOLLWAY CUSTOMER CARE CENTER

2700 Ogden Ave.

Downers Grove, Illinois 60515

1-800-UC-IPASS (1-800-824-7277) TTY: 630-241-6898

www.illinoistollway.com

Exhibit B

**Illinois Tollway**
**Notice of Toll Violation**
Payments: By Phone, mail or online at www.illinoistollway.com
1-800-824-7277 / 1-630-241-7302 - T.D.D.

Respondent(s):

MARVIN KUSHNER
CHERI J KUSHNER
*REDACTED*



70318714

| | |
|---|---|
| Notice Number: | VN08426610 |
| License Plate/Type: | *REDACTED* |
| Issue Date: | April 03, 2008 |
| Due Date: | April 24, 2008 |
| Amount Due: | $208.50 |

Your vehicle has been recorded by the Illinois Tollway's violation enforcement camera system for non-payment of the proper tolls. Within 21 days of the issue date of this notice you must either: pay the total amount due or request a hearing to contest the violations. If you had a valid I-PASS account in good standing, at the time of these violations, you do not need to schedule a hearing. The photo in the upper right corner of this page is representative of one of the alleged violation occurrences. Photos & documentation of all occurrences are available for inspection (see additional information below).

Section 10/10(a-5) of The Illinois Toll Highway Act and sections 2520.269(e) and 2520.750 of the Illinois Administrative Code authorizes The Illinois Tollway to adjudicate toll evasion violations administratively and assess a mandatory fine of $20.00 per violation against the registered owner of a vehicle that has been recorded as failing to pay the proper toll.

Failure to respond to this notice within 21 days shall be deemed as an admission of liability and a waiver of your right to a hearing and shall result in a Final Order of Liability being issued against you, by default, for the total amount due. Failure to satisfy any fines or penalties within 14 days after the entry of a Final Order of Liability, resulting by default or contest, shall result in an additional fine of $50.00 per liable violation. Failure to satisfy any fines or penalties after the entry of a Final Order(s) of Liability for 5 or more violations shall result in the Tollway petitioning the Secretary of State for suspension of your vehicle registration and/or driver's license and possible forwarding of this matter to a private agency or law firm for collection action.

**I-PASS PATRONS:** You may have received this notice if your account is not up to date with all current vehicle information. **YOU DO NOT NEED TO SCHEDULE A HEARING.** Call 1-800-824-7277 / 1-630-241-7302 - T.D.D. and a representative will assist you. Please have your I-PASS account number, notice number and license plate number available when you call.

Additional Information:
HEARING/EVIDENCE REVIEW: The purpose of a hearing is solely to determine whether or not a violation has occurred. The hearing officer does not have the legal authority to negotiate, waive or lessen the mandatory fine amount, extend the mandatory payment period or grant a payment plan.

Toll evasion is a public, strict liability and vicarious liability violation. Therefore the following are not legal defenses or mitigating factors under Illinois law: (1) the violation notice wasn't mailed sooner, (2) the driver did not intend to miss the payment or go through an I-PASS lane; or (3) someone else was driving the vehicle. This notice may not be inclusive of all violation events for this license plate either prior or subsequent to the dates in this notice.

If you wish to contest these violations or review all photos and documentation prior to a hearing please call 1-800-824-7277 / 1-630-241-7302 - T.D.D. to schedule a hearing and/or an evidence package review. Please have your name and license plate number available when you call.

DISPUTES: Sold vehicles, stolen vehicles or license plates, or commercial leased/rented vehicles please call 1-800-824-7277 / 1-630-241-7302 - T.D.D..

✂ ---------------------------------------------------------------------------------------------------------

**Return Coupon with your Payment To: Illinois Tollway, P.O. Box 5201, Lisle, IL  60532-5201**

Respondent(s):
MARVIN KUSHNER
CHERI J KUSHNER
1269 DEVONSHIRE
BUFFALO GROVE, IL 60089-1158

| | |
|---|---|
| Notice Number: | VN08426610 |
| Amount Due: | $208.50 |

Make Cashiers Check or Money Order Payable to: The Illinois Tollway

_____ Amex _____ Visa _____ MasterCard _____ Discover

Credit Card #: _____ Exp. Date: _____

Payment Amount: _____

Plate #: *REDACTED* - PAS

Name on Card: _____

Billing Address of Card if different than address on notice: _____

Exhibit C

# EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
**120 S. LaSalle Street, 18th floor**
**Chicago, Illinois 60603-3403**
**(312) 739-4200**
**(800) 644-4673**
**(312) 419-0379 (FAX)**
Email: info@edcombs.com
www.edcombs.com



April 17, 2008

Illinois Tollway
2700 Odgen Avenue
Downers Grove, IL 60515

Re: Marvin and Cheri J. Kushner, VN 08426610

Ladies/ Gentlemen:

We represent the Kushners. They request a hearing with respect to the above notice.

Sincerely,

Daniel A. Edelman

T:\21304\Correspondence\Demand_Correspondence.WPD

Exhibit D



*Illinois Tollway*

*The Illinois Tollway*
*2700 Ogden Avenue*
*Downers Grove, Illinois 60515-1703*
*Phone: 630/241-6800*
*Fax: 630/241-6100*
*TTY: 630/241-6898*

Writer's Direct (630) 241-6800, Ex. 1540
Legal Department Fax (630) 271-7559

**_By First Class Mail and e-mail_**

April 21, 2008

Mr. Daniel A. Edelman
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603
dedelman@edcombs.com

Re: Marvin and Cheri Kushner

Dear Mr. Edelman:

The Illinois Tollway understands that your clients Marvin and Cheri Kushner have received a toll violation notice and have until April 24, 2008 to schedule an administrative hearing. If your clients would like such a hearing the following dates/times are available:

May 20, 21 and 22, 2008 have hearing openings at 9:00 AM, 10:30 AM, 1:00 PM and 2:30 PM; and during the following week the dates of May 27, 28 or 29, 2008 are open for the 9:00 AM, 10:30 AM, 1:00 PM and 2:30 PM sessions.

Hearings are held at the Tollway's administrative office, which is located at 2700 Ogden Avenue, Downers Grove, Illinois.

Please contact me with the date/time that your clients select. I will get them on the schedule and confirm their hearing with you.

A review of the Tollway records indicates, however, that your clients failed to register the vehicle which is involved in the alleged toll violations to their I-PASS account. In such circumstances, if you or your client authorize the license plate number to be added to their I-PASS account, the violations will be dismissed and their I-PASS account will be charged the $8.50 in unpaid tolls. If your clients wish to obtain dismissal of the toll violations in this manner, please call or have your clients call Katie Geoghegan at (630) 241-6800, extension 2068 to authorize the addition of the license plate to their account.

If you have any questions please feel free to call me at the above number.

Sincerely,

Victor F. Azar
Sr. Assistant Attorney General

Exhibit E

**Azar, Victor**

| | |
|---|---|
| **From:** | Zachary Jacobs [zjacobs@edcombs.com] |
| **Sent:** | Friday, April 25, 2008 10:49 AM |
| **To:** | Azar, Victor |
| **Subject:** | Marvin and Cheri Kushner |

Victor

Pursuant to your correspondence of April 21, our clients Marvin and Cheri Kushner wish to register their vehicle with Illinois license #905 6929 to their I-PASS account.


Zachary A. Jacobs
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street
18th Floor
Chicago, IL 60603
312-917-4536
312-419-0379 fax
zjacobs@edcombs.com

Exhibit F

## Azar, Victor

| | |
|---|---|
| **From:** | Azar, Victor |
| **Sent:** | Friday, April 25, 2008 12:38 PM |
| **To:** | 'Zachary Jacobs' |
| **Subject:** | RE: Marvin and Cheri Kushner |
| **Attachments:** | rwservlet.pdf |

Zach:

Per your direction, the plate has been added to the I-PASS account and the tolls paid.  As you can see from the attached balance summary, the fines have been dismissed.


Victor F. Azar
Sr. Assistant Attorney General
Illinois State Toll Highway Authority
2700 Ogden Avenue
Downers Grove, Illinois 60515
(630) 241-6800, Extension 1540
Fax (630) 271-7559


**From:** Zachary Jacobs [mailto:zjacobs@edcombs.com]
**Sent:** Friday, April 25, 2008 10:49 AM
**To:** Azar, Victor
**Subject:** Marvin and Cheri Kushner

Victor

Pursuant to your correspondence of April 21, our clients Marvin and Cheri Kushner wish to register their vehicle with Illinois license #905 6929 to their I-PASS account.


Zachary A. Jacobs
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street
18th Floor
Chicago, IL 60603
312-917-4536
312-419-0379 fax
zjacobs@edcombs.com

4/29/2008

**Illinois Tollway**
P.O. Box 5201
Lisle, IL  60532-5201

Illinois Tollway

Run Time:     04/25/2008 11:35:51

**Party Balance Summary Report**

| General Information | | |
|---|---|---|
| Respondent Name: | MARVIN KUSHNER | Violator Flags: |
| | CHERI KUSHNER | |
| Respondent Address: | 1269 DEVONSHIRE | |
| | BUFFALO GROVE, IL 60089-1158 | |
| Plate Number: | 9056929 / IL / Passenger Car | |

**Balance Summary as of**     04/25/2008

| | Original Amount (A) | Escalated Amount (B) | Total Amount (C) | Payment Applied (D) | Dismissed Amount (E) | Balance Due (C - D - E) | Due Date |
|---|---|---|---|---|---|---|---|
| VN08426610 | $208.50 | $0.00 | $208.50 | $0.00 | $208.50 | $0.00 | 04/24/2008 |
| **Total Amount:** | **$208.50** | **$0.00** | **$208.50** | **$0.00** | **$208.50** | **$0.00** | |

| | |
|---|---|
| Payment Received: | $0.00 |
| Overpayment Amount: | $0.00 |
| Amount Refunded: | $0.00 |

## PERSONAL CHECKS WILL NOT BE ACCEPTED

Payment Options:
1. **Pay in person at the Illinois Tollway's Administration Building, 2700 Ogden Avenue, Downers Grove, IL 60515.**
2. **Pay by mail, using the coupon below.**
3. **Pay by phone - call 1-800-824-7277 with your credit card information. Have your license plate number, notice number or case number available when you call.**

| Respondent: | MARVIN KUSHNER | |
|---|---|---|
| | CHERI KUSHNER | **Make Cashiers Check Or Money Order Payable to: Illinois Tollway** |
| License Plate Number: | 9056929 / IL / Passenger Car | **(Write license plate number, notice number or case** |
| Amount Due: | $0.00 | **number on Cashiers Check or Money Order)** |

**DO NOT SEND CASH or PERSONAL CHECK**          Amount Enclosed: $_____

Return Cashiers Check or Money Order payment to:

Illinois Tollway
Violation Processing Center
P.O. Box 5201
Lisle, IL  60532-5201

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARVIN AND CHERI KUSHNER, | ) | |
| on behalf of themselves and a class, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | 08-CV-2148 |
| | ) | Judge Conlon |
| ILLINOIS STATE TOLL HIGHWAY | ) | Magistrate Judge Keys |
| AUTHORITY, BRIAN MCPARTLIN, | ) | |
| and MATTHEW BEAUDET, | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I, VICTOR F. AZAR, hereby certify that I served the Defendants' Motion to Dismiss and Defendants' Memorandum in Support of its Motion to Dismiss to Daniel A. Edelman, Cathleen M. Combs, James O. Latturner and Zachary A. Jacobs of Edleman, Combs, Latturner & Goodwin, LLC, Attorneys for the Plaintiffs, Marvin and Cheri Kushner, by CM/ECF e-filing on June 16, 2008.

This 16th day of June, 2008,

LISA MADIGAN                          s/ Victor F. Azar
Illinois Attorney General             ARDC # 6203693
                                      Assistant Attorney General
                                      2700 Ogden Avenue
                                      Downers Grove, IL 60515
                                      (630) 241-6800, Extension 1540