IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARVIN KUSHNER, CHERI J. KUSHNER, and JAIVA GOODRUM, on behalf of themselves and a class,  ) ) ) | |
| ) | Case No. 08 C 2148 |
| Plaintiffs,                ) | |
| ) | Judge Conlon |
| vs.                    ) | |
| ) | Magistrate Judge Keys |
| ILLINOIS STATE TOLL HIGHWAY AUTHORITY, ) BRIAN MCPARTLIN, and MATTHEW BEAUDET,  ) | |
| ) | **JURY DEMANDED** |
| Defendants.              ) | |

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT**

**FACTS**

Plaintiffs Marvin Kushner and Cheri Kushner ("Plaintiffs" or "the Kushners")[1] received a Notice of Toll Violation on or about April 10, 2008 from the Illinois Tollway ("Tollway") which alleged ten toll violations between May 7, 2006 and December 11, 2007. The Notice informed the Kushners that $208.50 was due by April 24, 2008, and informed them that failure to respond to the notice within twenty-one days would be deemed as an admission of liability and would result in a waiver of their right to a hearing and a Final Order of Liability against them. The Notice informed the Kushners of the existence of the option of an administrative hearing and

---

[1] Plaintiff Jaiva Goodrum has reached an individual settlement with Defendants which does not affect the claims of the Kushners or the putative class. All discussion of Plaintiffs' claims herein is intended to refer only to the claims of the Kushners.

stated "if you wish to contest these violations or review all photos and documentation prior to a hearing please call 1-800-824-7277 / 1-630-241-7302 - T.D.D. to schedule a hearing and/or an evidence package review. Please have your name and license plate number available when you call." Nothing in the Notice provided any alternate means of contacting the Tollway.

The Kushners attempted to contact the Illinois Tollway using the telephone number provided on the Notice on multiple occasions, but never received anything other than a busy signal. News reports indicate that the Kushners' experience was not atypical. Records show that the Tollway failed to send notices of toll violations from about September 2006 to the fall of 2007, which created a backlog of over 2 million alleged violations. As a result of this backlog, the Tollway's telephone system for responding to inquiries and requests for hearings was overwhelmed and many callers were unable to contact the Tollway. Press reports have indicated that the cameras used to read the license plates of alleged toll violators misreads the license number approximately 25% of the time, meaning that 25% of the alleged violations are erroneous.

## LEGAL STANDARD

In Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007), the Supreme Court held that: "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief." 127 S.Ct. at 2200 (complaint alleging cruel and unusual punishment through the withholding of medical treatment met pleading standards). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the... claim is and the grounds upon which it rests." 127 S.Ct. at 2200 (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)(complaint alleging antitrust conspiracy was only

required to allege sufficient facts to support a "plausible claim for relief")).  In EEOC v. Concentra Health Services, Inc., 496 F.3d 773, (7th Cir. 2007), the Seventh Circuit held a complaint must meet two easy-to-clear hurdles:  first, the complaint must provide sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests; second, the complaint's allegations must raise the possibility of relief above a speculative level.  496 F.3d 773, 776.  Because Defendants are challenging The Kushners' standing on the basis of the pleadings, all material allegations of the complaint must be taken as true, and the complaint must be construed in favor of the Kushners.  Pennell v. City of San Jose, 485 U.S. 1, 7 (1988).

## ARGUMENT

### I. JUSTICIABILITY

#### A. Plaintiffs have standing.

A party has standing if (1) there is an injury or the threat of injury, (2) the injury or threat of injury is fairly traceable to the defendant's conduct, and (3) there is a likelihood that the injury or threat of injury can be redressed through a favorable decision.  Rawoof v. Texor Petroleum Co., 521 F.3d 750, 756 (7th Cir. 2008); Ind. Right to Life, Inc. v. Shepard, 507 F.3d 545, 549 (7th Cir. 2007).  Defendants challenge only the first of these elements, arguing that there was no actual injury to The Kushners.  Def. Memo at 4-5.  However, as the Seventh Circuit has recognized, this element "does not require a certainty or even a very high probability that the plaintiff is complaining about a real injury suffered or threatened.  A suit to redress an injury to the plaintiff is a 'case' or 'controversy' within the meaning that the courts have imprinted on these words of Article III of the Constitution...as long as there is some nonneglibible, nontheoretical, probability of harm that the plaintiff's suit if successful would redress.

Mainstreet Org. of Realtors v. Calumet City, 505 F.3d 742, 744 (7th Cir. 2007).  Defendants argument cannot be sustained because the Kushners have suffered an injury and there is a threat of future injury.

### 1. Plaintiffs have suffered an injury.

Defendants dismiss the injury to the Kushners by stating "Call center busy signals and long waits are an unfortunate feature of modern life, just like long lines at the clerk's office..." Def. Memo at 5.  Defendants' examples are inapposite, however, because the Kushners are not complaining of "long lines," they are complaining of being denied access to the line itself.  Using the telephone number provided by Defendants, which was the only method of contacting the ISTHA provided in the Notice, the Kushners were unable to reach the ISTHA after attempting to do so for five days.  A busy signal that continues for five days is not analogous to a long line at the clerk's office, but is more comparable to a locked door at the court clerk's office.

Defendants argue that because the Kushners retained counsel and were eventually able to arrange hearings on their alleged toll violations, this somehow demonstrates the adequacy of Defendants' procedures. Def. Memo at 5.  Defendants do not acknowledge, however, that the Kushners' alleged violations were resolved only with having to get a lawyer at a greater cost than the fines.  The Kushners were forced to go outside the procedure Defendants had provided for alleged toll violators to seek a hearing, and there is nothing in the Notice that indicates requests outside that procedure will be honored in the future.  The present matter is intended to address those deficiencies in Defendant's procedures, because "To the extent that [lawsuits] encourage defendants to discontinue current violations and deter them from committing future ones, they afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of

ongoing unlawful conduct." Friends of the Earth, 528 U.S. at 186.

### 2. There is a threat of future injury.

Defendants fail to address the threat of future harm to the Kushners, which provides an independent basis for establishing the first element of standing. Nothing in Defendants' Memorandum acknowledges that because Defendants have not modified their procedures regarding the notices of alleged toll violations, there is a probability that the same injury described in Plaintiffs' Amended Complaint will occur again. Despite Defendants' silence, the probability of future injury is sufficient establish standing for purposes of Article III. See Hoover v. Wagner, 47 F.3d 845 (7th Cir).

In Hoover, the plaintiffs brought suit against a state judge and the chief of police under 42 U.S.C. § 1983 for injunctive and declaratory relief to deter the defendants from infringing on the plaintiffs First Amendment rights. 47 F.3d at 846. The District Court had dismissed the plaintiffs claims for lack of standing, but the Seventh Circuit explained that the analysis for purposes of plaintiffs' standing turned on "the probability that unless the plaintiffs obtain a declaration or injunction[,]" against the defendants, they would be subjected to future harm. Id. at 847. The court did not create a demanding standard for establishing such a probability, holding instead that "All that a plaintiff need show to establish standing to sue is a reasonable probability–not a certainty–of suffering tangible harm unless he obtains the relief that he is seeking in the suit."; see also Pennell, 485 U.S. at 8; North Shore Gas Co. v. Environmental Protection Agency, 930 F.2d 1239, 1242 (7th Cir. 1991) ("probabilistic benefit from winning a suit is enough...to confer standing in the undemanding Article III sense").

Just as in Hoover, there is a probability that Plaintiffs in the present matter will suffer future injury unless granted the relief sought in their complaint.  The Kushners remain regular users of the Illinois Tollway, and Defendants have offered no evidence that future notices of alleged toll violations will include alternate methods of contacting the ISTHA.  Given the Tollway's reported error rate of assessing alleged toll vioations, Defendants have offered no reason to conclude that the precise injury to which Plaintiffs and the putative class were subjected will not reoccur, forcing the Kushners to again retain counsel and again go outside the ISTHA's established procedures to attempt to obtain relief.  This is precisely why the Supreme Court has recognized that "for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress."  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,528 U.S. 167, 185-86 (2000).

### B.    The suit is not moot because the violations are capable of repetition.

The present matter is not moot because this matter is capable of repetition yet evading review.  See Krislov v. Rednour, 226 F.3d 851, 858 (7th Cir. 2000).  In the present matter, this exception is applicable because the challenged action was too short in duration to be fully litigated prior to its expiration, and there is a reasonable expectation that the same the Kushners will be subjected to the same action again.  See Protestant Mem. Med. Ctr., Inc. v. Maram, 471 F.3d 724, 730 (7th Cir. 2006)  (citing Lewis v. Cont'l Bank Corp., 494 U.S. 472 (1990).

In Krislov, candidates for political office brought suit to challenge the enforcement of the Illinois nomination petitions statute.  Id. at 856.  Although the election in which the plaintiffs had been seeking to participate had passed, the court in Krislov recognized that matter was not moot

because challenged action was likely to recur. Id. at 859. The plaintiffs had expressed interest in running for political office again, and it was likely they would again be adversely affected by the same actions from the defendants. Id. Just as in Krislov, the present matter is not moot because the Kushners remain regular users of the Illinois Tollway, and it is probable that they will be subjected again to the same actions from Defendants.

## II.    DUE PROCESS

### A.    Plaintiffs have a protected interest.

No State may deprive a person of life, liberty, or property without due process of law. U.S. Const., amend. XIV; ILL Const. 1970, art. I § 2. The essence of due process is "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976); Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm of Adjustment, Central Region v. Union Pacific Railroad, 522 F.3d 746 (7th Cir. 2008); Bair v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205, 389 F.3d 685, 690 (7th Cir. 2004).

Defendants attempt to sidestep their duty to provide a meaningful opportunity for alleged violators to be heard by stating that Plaintiffs "stopped trying to reach the Tollway's call center after only 5 days[.]" Def. Memo at 8 (emphasis added). Defendants may consider attempting for five days to reach the Tollway without success to be nothing more than a mere inconvenience, but such an impediment goes well beyond "lengthy forms to fill out, inconvenient times for a hearing, long lines, hearing locations at some distance from a citizen's residence" Def. Memo at 7.

Defendants further try to dismiss their responsibility to provide alleged toll violators a meaningful opportunity to be heard by arguing that the "notice clearly states that alleged violators

7

have the right to request a hearing and provides, but does not limit, that requests can be made by utilizing an 800 number." Def. Memo at 8.  Again, there is nothing in the Notice that provides an alternative method of contacting the Tollway to request a hearing, nor is there any indication that attempts to schedule a hearing using alternate means will be considered legally sufficient or honored as a matter of course.  Essentially, Defendants are asking recipients of a notice of toll violation to re-interpret its language to infer that the sole method Defendants provide to schedule a hearing really isn't the sole method to schedule a hearing, guess at alternate methods the Tollway may find acceptable, and hope for the best, all while the threat of significant fines and the suspension of their drivers license hangs over their heads.

>    **B.**    **ISTHA's Adminstrative review procedure does not provide adequate due process for the types of violations alleged.**

Defendants rely primarily upon <u>Michalowicz v. Village of Bedford Park</u>, 528 F.3d 530 (7th Cir. 2008) for their argument that the existence of the Administrative Review Law ("ALR"), 735 ILCS 5/3-101 *et seq* precludes Plaintiffs' due process claims in this matter.  Def. Memo at 9-11.  The facts of <u>Michalowicz</u>, however, are readily distinguishable from those of the present matter.  In <u>Michalowicz</u>, the plaintiff claimed he was denied due process because he did not receive adequate notice of his pre-termination hearing, was not allowed to present sufficient evidence on his own behalf, and was subjected to the same allegedly biased Village Board at his pre-terminatino and  post-termination hearings. <u>Id.</u> at 533.  The Seventh Circuit characterized the plaintiff's claims as "a challenge to the 'random and unauthorized' actions of the state officials in question, i.e. to their unforeseeable misconduct" and reasoned that "[b]ecause such misconduct is inherently unpredictable," the ARL provided the appropriate remedy to the plaintiff's claims.

Plaintiffs are not alleging isolated bias by any particular hearing officer, nor are they are challenging the evidence they were allowed to present on their own behalf at an administrative hearing. Instead, and in direct contrast to Michalowicz, plaintiffs are challenging Defendants' standard, systemic notice of toll violations produced and sent by Defendants to Plaintiffs and the putative class. The conduct of Defendants which The Kushners are challenging is not random or unauthorized, and certainly not unpredictable in the present matter. The present suit is the most efficient, and most appropriate, method of addressing Defendants' actions and preventing future misconduct. See Friends of the Earth, 528 U.S. at 185-86.

### III.    MCPARTLIN AND BEAUDET ARE PROPER DEFENDANTS

Defendants argue that Defendants Brian McPartlin and Matthew Beaudet are not proper defendants in the present matter, citing Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996) and Eades v. Thompson, 823 F.2d 1055, 1063 (7th Cir. 1987). Def. Memo at 11. Both Vance and Eades, however, are readily distinguishable from the present matter. In Vance, the Seventh Circuit examined a district court's grant of summary judgment in a prisoner's 42 U.S.C. § 1983 suit against three prison officials alleging that a prison guard used excessive force against her and that two prison officials acted with deliberate indifference to her medical needs. 97 F.3d at 988. In Eades, the plaintiff, also a prisoner, brought suit against various state officials associated with Illinois' correctional system, alleging that he was denied proper medical care and was thus deprived of constitutional rights under 42 U.S.C. § 1983. 823 F.2d at 1057. Neither of the plaintiffs in Eades and Vance was challenging the policies or procedures over which the dismissed individual defendants had responsibility, but instead were challenging specific action (or inaction) of other correctional facility employees and attempting to assign liability to their

9

organizational superiors.

Both Vance and Eades are inapposite because in the present matter, Plaintiffs are not challenging an isolated act by a Tollway employee and attempting to assign liability to McPartlin and Beaudet, but instead challenging the policy McPartlin and Beaudet both control. McPartlin, as the Tollway's Executive Director and its principal executive officer, and Beauden, as the Tollway's executive in charge of electronic tolling, are necessary and proper parties to the present suit because as a part of their official responsibilities they have approved, condoned, or at the very least turned a blind eye to the Tollway's policy and practice of providing alleged toll violators with inadequate means to challenge their violations. Johnson v. Snyder, 444 F.3d 579, 584 (7th Cir. 2006) Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995)

## IV.    STATE LAW CLAIMS

### A.    Count II.

Defendants argue that the Kushners state law claims should be dismissed because "A comparison of the relevant provision of the Toll Highway Act and the accompanying rules with the Notice indicate that the Tollway has complied with the legal requirements." Def. Memo at 12. This argument cannot be sustained. The Illinois Toll Highway Act provides in relevant part:

> Rules establishing a system of civil administrative adjudication must provide for written notice...of the alleged violation <u>and an opportunity to be heard on the question of the violation</u> and must provide for the establishment of a toll-free telephone number to receive inquiries concerning alleged violations.

605 ILCS 10/10 (emphasis added). The Notice did not provide "an opportunity to be heard" in any meaningful sense because when the Kushners used the telephone number provided as the

sole method for recipients to contact the Tollway, they were unable to reach the Tollway. A constant busy signal for a period of five days is not "an opportunity to be heard" under any reasonable definition.

### B.     Count III.

Defendants finally argue that Count III of the Amended Complaint should be dismissed "because the Kushners failed to perform their contractual obligation[.]" In support, Defendants attach an excerpt from the I-Pass agreement that purportedly pertains to the Kushners,. See Exhibit A to Def. Memo.  Defendants have not shown, however, that the Kushners ever received an agreement containing Exhibit A, nor have Defendants shown that the particular agreement was in effect at the time the Kushners signed up for I-Pass service.  I-Pass users sign up for service in a variety of settings, and Defendants have not shown that the Kushners were made aware of any of the provisions upon which they now seek to rely.

### CONCLUSION

For the reasons stated, the Court should deny Defendantss motion to dismiss.

>Respectfully submitted,

>s/ Zachary A. Jacobs
>Zachary A. Jacobs

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Zachary A. Jacobs
EDELMAN, COMBS
    & LATTURNER, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

    I, Zachary A. Jacobs, hereby certify that on August 11, 2008 a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Victor F. Azar            vazar@getipass.com

                                          s/ Zachary A. Jacobs
                                          Zachary A. Jacobs