IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARVIN KUSHNER, CHERI KUSHNER and JAIVA GOODRUM, on behalf of themselves and a class, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 08-CV-2148 Judge Conlon |
| ILLINOIS STATE TOLL HIGHWAY AUTHORITY, BRIAN MCPARTLIN, and MATTHEW BEAUDET, | ) ) ) ) | Magistrate Judge Keys |
| Defendants. | ) ) | |

**DEFENDANTS' REPLY BRIEF
IN SUPPORT OF THEIR MOTION TO DISMISS**

**BACKGROUND**

The Illinois State Toll Highway Authority ("Tollway") operates a system of toll highways in Northern Illinois that accepts payment by cash or electronically. Electronic toll collection utilizes a windshield-mounted transponder (I-PASS) that is associated with an I-PASS account to pay for tolls when the vehicle goes through a toll collection point. If the transponder is present, working and not improperly mounted, then the toll is deducted from the account. If no transponder is detected, a photograph of the license plate is taken. The system then looks to see if the license plate is listed with the I-PASS account and if listed, the toll is deducted from the account. If the license plate is not listed with any I-PASS account, the photograph becomes evidence of a toll violation.

Marvin and Cheri Kushner ("Plaintiffs") had and continue to have an I-PASS account with the Tollway. The I-PASS Agreement provides in paragraph 12: "If the license plate and plate type is inaccurate or not listed in your I-PASS account, the transaction will be treated as a

violation." Plaintiffs did not register the license plate of their car in their I-PASS account. As a result, on April 3, 2008, the Tollway issued Plaintiffs a Notice of Violation for 10 violations with $8.50 in tolls and $200.00 in potential fines.

Plaintiffs received the Notice on April 10, 2008. The Notice contained a photograph of the license plate, a list of alleged dates and times when Plaintiffs failed to pay the applicable tolls while using the photographed vehicle on the Tollway System and information about the hearing process, their rights to hearing and the 800 number to call and schedule a hearing. The Notice provided 21 days from the date of the Notice for Plaintiffs to schedule a hearing and advised that if they failed to do so, a default judgment would be entered against them.

Plaintiffs allege that after they received the Notice they "attempted to call the number provided by ISTHA on multiple occasions but the telephone was always busy and never answered." Plaintiffs retained an attorney who filed this lawsuit and then they proceeded to request a hearing by mail. Despite having until April 24, 2008 to call and get a hearing, Plaintiffs filed this lawsuit on April 15, 2008.

The Tollway upon receipt of Plaintiffs' request for a hearing offered Plaintiffs a hearing or a settlement prior to the expiration of the 21 day period allotted to request a hearing. The settlement required Plaintiffs to register the vehicle in the photographs on the Violation Notice to their I-PASS account and pay the missed tolls. The Tollway then dismissed $200.00 in fines. Through their attorney Plaintiffs were able to get the fines dismissed without the inconvenience of attending a hearing and probably being found liable.

## ARGUMENT

### I.     Plaintiffs Lack Standing

Plaintiffs correctly state that the legal standard of an "injury" within the meaning of

Article III of the Constitution, is that "so long as there is some nonnegligible, nontheoretical, probability of harm that the plaintiff's suit if successful would redress."[1] However, Plaintiffs fail to respond to the fact that the Tollway offered Plaintiffs a hearing or a favorable settlement; the Plaintiffs accepted the settlement, which required Plaintiffs merely to register their vehicle to their I-PASS account and pay the tolls they missed; and the Tollway then dismissed the $200.00 in fines stemming from Plaintiffs' toll violation. At no time did Plaintiffs suffer any financial harm or loss of driving privileges. Thus, there was no injury to their property or liberty interests.

Plaintiffs argue that Defendants do not question whether the Plaintiffs met the third prong of the standing test, namely, that "there is likelihood that the injury or threat of injury can be redressed through a favorable decision." Plaintiffs quoting *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008); *Ind. Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549 (7th Cir. 2007). This argument is incorrect. The Defendant's Memorandum addressed this issue in the mootness argument. (Memo at 6-7). If the Plaintiffs had opted for a hearing rather than accepted the Tollway's offer of a no-cost settlement they would have been found liable. It is undisputed that Plaintiffs did not register their car with their I-PASS account. Their having an I-PASS account is not a defense because the I-PASS Agreement provides: "If the license plate and plate type is inaccurate or not listed in your I-PASS account, the transaction will be treated as a violation."

Plaintiffs argue that they suffered an injury because they had to "get a lawyer". (Plaintiffs' Response at 4). However, the retention of a lawyer is not an injury, especially when there is no requirement to hire an attorney. Although retaining an attorney may be advisable when involved in legal proceedings, individuals are allowed to represent themselves *pro se*, without the presence of an attorney. *People v. Campbell*, 129 Ill.App.3d 819, 820 (4th Dist.

---

[1] Plaintiffs' quotation of *Mainstreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 744 (7th Cir. 2007).

1984); *Faretta v. California*, 422 U.S. 806, 845 (1975). It is quite common for individuals to represent themselves in minor administrative hearings over matters such as parking tickets and missed tolls.

Plaintiffs' argument that they have standing because they face a real threat of being charged with future toll violations does not bear scrutiny. Plaintiffs ignore the fact that the only reason they received the subject toll violations is because they failed to register their vehicle to their I-PASS account. Since they did not register the license plate in the system, they received a violation notice pursuant to the plain terms of their I-PASS Agreement.

If Plaintiffs continue to comply with the I-PASS Agreement by, among other things, registering their vehicles to their I-PASS account, it is extremely improbable that they will ever receive a violation again. In addition, it is wholly speculative whether Plaintiffs if charged with a toll violation at some time in the future will encounter any difficulties in arranging a hearing.

Thus, Plaintiffs lack standing because they suffered no injury, would have been found guilty had they gone forth with a hearing rather than the settlement, and cannot show that they will be charged with a a toll violation or have any difficulty in arranging a hearing in the unlikely event that they are so charged at some time in the future.

## II.    The Case is Moot

The Plaintiffs appear to concede that there is no live controversy by arguing only that the matter is capable of repetition. They do not contest that there is no controversy with the Plaintiffs as their administrative case was resolved completely when the Tollway dismissed all of the toll violation charges against them.. Further they do not contest Defendants' arguments that "As a general rule, a purported class action becomes moot when the personal claims of all named plaintiffs are satisfied and no class has been properly certified." *Grant ex rel. Family Eldercare*

*v. Gilebrt*, 324 F.3d 383, 389 (5th Cir. 2003).   However, the Plaintiffs merely argue that they have a reasonable expectation that they "will be subjected to the same action again." Although they argue that they fall within the "capable of repetition" exception, there is actually no reasonable probability that the Plaintiffs will receive another violation.

As discussed above, Plaintiffs only received the notices because they did not register their car in their I-PASS account. Plaintiffs admit they subsequently registered their license plate. Therefore, there is no reasonable expectation that they will get another toll violation. Their personal interest in the outcome of the lawsuit came to an end when the Tollway dismissed all the toll violations against Plaintiffs after they registered their vehicle to their I-PASS account. (See *Gates v. Towery*, 430 F.3d 429 (7th Cir. 2005).) The Plaintiff's reliance on *Krislov* is misguided, because in that case both the rule that was the alleged constitutional problem still existed and the plaintiff had an interest in running for office again. *Krislov v. Rednour*, 226 F.3d 891 (7th Cir. 2000). Plaintiffs may be using the Tollway, but their vehicle is registered in the I-PASS system. There is no reasonable probability that more violations ever will be issued against them.

Therefore, the matter is moot and the Complaint should be dismissed.

### III.     Plaintiffs Received Due Process

#### A. Plaintiffs were not deprived of any protected interests

Plaintiffs do not contest that Defendants' argument that the Tollway's administrative procedures afford due process. Plaintiffs merely argue that the Tollway deprived them of a meaningful opportunity to be heard because they tried to call multiple times over 5 days. However, at the time they filed their lawsuit Plaintiffs had 9 more days left to request a hearing and before the Tollway would take any adverse action against them.

Plaintiffs "cannot create a due process claim by ignoring established procedures." *Santana v. City of Tulsa*, 359 F.3 1241, 1244 (10th Cir. 2004).   The reality is that Plaintiffs ignored the established procedure by cutting short the time allotted in the notice to request a hearing, purportedly because they were inconvenienced with a busy signal on multiple occasions, and filed suit instead.  It is as if Plaintiffs were more interested in filing a lawsuit than in resolving their toll violations through a haring otherwise.

Furthermore, as soon as the Tollway learned that the Plaintiffs wanted a hearing, the Tollway offered to schedule a hearing for the Plaintiffs.  The Tollway did so within the time limits in the Notice for the Kushners to request a hearing.  Plaintiffs concede that they were given an opportunity for a hearing but settled the case instead.

Plaintiffs try to argue that the Tollway only offers hearings if alleged toll violators called into the 800 number since that is what is listed on the Notice.  They ignore the reality that Plaintiffs and Co-Plaintiff Goodrum (as well as anyone else) were given a hearing based upon a written request.  The Tollway lists the 800 number, but also states that alleged toll violators can "request a hearing."   Just because the phone call is the only stated manner of requesting a hearing does not preclude alleged toll violators from using other means to request a hearing, as illustrated by the cases of Plaintiffs.

    B.    **The Administrative Review Law provides sufficient protections**

Plaintiffs do not contest the fact that the Administrative Review Law[2] provides a sufficient remedy for individuals who may have had their due process rights or legal rights violated or disagree with the fact findings of the hearing officer.  Plaintiffs do not contest that if they could not get a hearing from the Tollway, they had a remedy in State Court to challenge the agency's failure to schedule them a hearing.  (See *Niles Tp. High School Dist. 219, Cook County*

---

[2] 735 ILCS 5/3-101 *et seq*.  *See also* 605 ILCS 10/10(a-5); 92 Ill. Adm. Code 2520.770.

*v. Illinois Educational Labor Relations Board*, 369 Ill.App.3d 128, 136 (1st Dist. 2006).

Rather Plaintiffs merely try to distinguish *Micahlowicz v. Village of Bedford Park,* 528 F.3d 530 (7th Cir. 2008). They appear not to contest that if they actually could not have gotten a hearing from the Tollway their due process rights would have, been satisfied by the Administrative Review Law. Rather, they claim that their suit is the "most efficient, and most appropriate, method of addressing Defendants actions and preventing future misconduct," (Plaintiffs' Response at 9) and the due process afforded by the Administrative Review Law is somehow irrelevant.

Plaintiffs' arguments fail because efficiency is not the legal standard. Rather the standard is "whether sufficient state-law protection exists, not whether sufficient protections were afforded." *Michalowicz* at 534. The only Plaintiffs are the Kushners and not the class. The question of class certification has not been brought before the Court and the Motion to Dismiss deals with Plaintiffs because they are the only ones before the Court. Therefore, the question before the Court is whether the Administrative Review Law provided these Plaintiffs with due process had they failed to receive a hearing or dismissal of their toll violation charges by the Tolway. *Michalowicz* establishes that the availability of the Administrative Review Law provided Plaintiffs with sufficient due process. *Id*. at 532.

**IV.    McPartlin and Beaudet are not appropriate defendants**

Plaintiffs argue that Brian McPartlin and Matthew Beaudet are proper defendants because "as a part of their official responsibilities they have approved, condoned, or at the very least turned a blind eye to the Tollway's policy and practice of providing alleged toll violators with inadequate means to challenge their violations." (Plaintiffs' Response at 10). However, Plaintiffs never alleged either McPartlin or Beaudet did anything except hold their respective

positions. (Am. Comp. ¶s 7 and 8). Every alleged act is alleged to be performed by "ISTHA" and not the "Defendants." (See Am. Comp. ¶s18, 19, 21, 24 and 38). Despite the argument that this is not a case of specific wrong doing but a challenge to policies which relies upon *Johnson v. Snyder*, 444 F.3d 579 (7th Cir. 2006) and *Gentry v. Duckworth*, 65 F.3d 555 (7th Cir. 1995), Plaintiffs do not allege any conduct involving McPartlin and/or Beaudet. They do not allege the minimal "they knew or should have known" of the complained of practices and failed to correct them. The Complaint only alleges the Tollway sent out the allegedly defective notices.

Therefore, McPartlin and Beaudet are not properly joined and the Complaint, as to them, should be dismissed even if one or more of Plaintiffs' claims are held to be legally sufficient.

**V.    State Law Claims**

Plaintiffs do not contest that if Count I is dropped, Counts II and II should be dropped because, if "the federal claim drops out before trial, the federal district court should relinquish jurisdiction over the supplemental claim." *Van Harken v. City of Chicago,* 103 F.2d 1346, 1354 (7th Cir. 1997) *cert. denied* 520 U.S.2d 1241 (1997). If, however, the Court reaches those supplemental claims then they should be dismissed as well.

**A.  Count II should be dismissed because the Notices are sufficient**

Count II should be dismissed because it fails to state a cause of action. The Complaint alleges that the Notices issued by the Tollway do not comply with statutory and/or regulatory requirements. In their argument, Plaintiffs fail to respond to the Tollway's arguments about compliance with the Administrative Rules. In effect they concede that the Notices comply with the regulatory requirements. This concession is fatal to the entire claim, because the rules are the implementation of Section 10(a-5) of the Toll Highway Act.

As cited by Plaintiffs, Section 10(a-5) of the Toll Highway Act provides in relevant part:

"Rules establishing a system of civil adjudication must provide for written notice…of the alleged violation and an opportunity to be heard on the question of the violation." 605 ILCS 10/10(a-5). The plain reading of the Act requires the Tollway to establish rules for written notice and provide for an opportunity to be heard. The Tollway established rules for written notice and providing for an opportunity to be heard pursuant to 92 Ill. Admin. Code 2520.705. The purpose of the rule is to ensure that the alleged violators are informed. The 800 number, which is explicitly required in Section 10(a-5), performs the function of informing the alleged violators of one way to get an opportunity to be heard. Plaintiffs confuse the Notice with the opportunity to be heard.

The Notice is not the hearing and is not the opportunity to be heard. The Tollway included everything that the statute and regulations required to be included in the Notice. The Notices meet all the requirements of both the statute and the regulations implementing the statute and contain all the requisite information dictated by them. Therefore Count II should be dismissed.

**B.  Count III should be dismissed because Plaintiffs fail to allege a Breach of Contract**

Count III fails to allege a breach of contract. Plaintiffs argue that Defendants do not show that Plaintiffs were "aware of any of the provisions upon which they now seek to rely," which is   rather ironic in that Plaintiffs boldly allege in their Complaint that there is a contract between the Tollway and Plaintiffs "pursuant to which the customer is entitled to use the Tollway system for the posted tolls." (Am. Comp. ¶ 44).

Despite their contention that Defendants did not establish that Plaintiffs were aware of the I-PASS Agreement, they did not contest that they still failed to allege, as required in a breach of contract case, that they performed their contractual obligations. See *Falcon Associates, Inc. v. City of O'Fallon, Ill.*, 867 F.Supp. 778, 780-781 (S.D.Ill., 1994). Without the allegation of claim

9

must be dismissed.

Plaintiffs allege the Tollway breached some nebulous contract without setting forth the terms of said "contract."  They object to the actual contract--the I-PASS License Agreement--because it does not say what they want it to say.  Either way, Count III of the Complaint should be dismissed.  Either Plaintiffs have failed to allege they performed their contractual obligations or they did not perform the actual terms of the I-PASS License Agreement by not registering their vehicle's license plate to their I-PASS account (or both).  Either way, Count III should be dismissed.

## **CONCLUSION**

For the reasons state in the Memorandum and above, the Court should grant Defendants' Motion to Dismiss and Dismiss the Complaint as to all Defendants.

August 18, 2008

|  |  |
|---|---|
| LISA MADIGAN<br>Attorney General of Illinois | s/ Victor F. Azar<br>ARDC # 6203693<br>Assistant Attorney General<br>2700 Ogden Avenue<br>Downers Grove, IL 60515<br>(630) 241-6800, Extension 1540 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARVIN KUSHNER and CHERI KUSHNER, ) <br> and JAIVA GOODRUM ) <br> on behalf of themselves and a class, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> ILLINOIS STATE TOLL HIGHWAY ) <br> AUTHORITY, BRIAN McPARTLIN, ) <br> and MATTHEW BEAUDET, ) <br> ) <br> Defendants. ) | 08-CV-2148 <br> Judge Conlon <br> Magistrate Judge Keys |

## CERTIFICATE OF SERVICE

I, Victor F. Azar, hereby certify that I served the Defendants' Reply Brief in Support of Their Motion to Dismiss to Cathleen M. Combs, Daniel A. Edelman, James O. Latturner and Zachary A. Jacobs of Edelman, Combs, Latturner and Goodwin, LLC, Attorneys for the Plaintiffs, Marvin Kushner and Cheri Kushner, by CM/ECF e-filing on August 18, 2008.

This 18th day of August, 2008.

|  |  |
|---|---|
|  | s/ Victor F. Azar |
| LISA MADIGAN | ARDC # 6203693 |
| Attorney General of Illinois | Assistant Attorney General |
|  | 2700 Ogden Avenue |
|  | Downers Grove, IL 60515 |
|  | (630) 241-6800, Extension 1540 |