IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARVIN KUSHNER, ) | |
| CHERI J. KUSHNER, and ) | |
| JAIVA GOODRUM, on behalf ) | Civil Action No.: 08 C 2148 |
| of themselves and a class, ) | |
| ) | Suzanne B. Conlon, Judge |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| ILLINOIS STATE TOLL ) | |
| HIGHWAY AUTHORITY, ) | |
| BRIAN MCPARTLIN, and ) | |
| MATTHEW BEAUDET, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

Marvin Kushner, Cheri J. Kushner, and Jaiva Goodrum, on behalf of themselves and a class, sue the Illinois State Toll Highway Authority ("ISTHA"), its Executive Director Brian McPartlin, and its executive in charge of electronic tolling Matthew Beaudet. Plaintiffs allege deprivation of procedural due process in violation of 42 U.S.C. § 1983, violation of the Illinois Toll Highway Act, 605 ILCS 10/10, and breach of contract. Defendants move to dismiss the amended complaint for lack of jurisdiction and failure to state a claim. For the reasons set forth below, the motion is granted.

### BACKGROUND

The following is derived from plaintiffs' amended complaint and the exhibits defendants submit in support of their motion to dismiss. ISTHA operates the 274-mile toll highway system in northern Illinois and accepts payment by cash or electronically. To pay tolls electronically, a driver

1

must purchase and mount a transponder, called an I-Pass, to the car's windshield or license plate. When purchasing an I-Pass, a customer pays a refundable deposit and prepaid tolls, and may register a credit or debit card to replenish the account. When the car proceeds through a toll collection point, the toll is deducted from the I-Pass account. The ISTHA employs a violation enforcement system that photographs a car's license plate as it proceeds through a toll collection point. If the car fails to pay the toll, the photograph evidences a toll violation.

On April 10, 2008, the Kushners received a toll violation notice, dated April 3, 2008, from ISTHA. The notice provided a toll-free telephone number and a 21-day deadline (April 24, 2008) to request a hearing to contest the violation. According to the notice, failure to respond is an admission of liability and a waiver of the hearing right. The notice also states I-Pass users may have received the notice because their current car was not registered to the I-Pass. The notice advises I-Pass users a hearing is unnecessary, but instructs them to call the same toll-free telephone number provided to request a hearing. The Kushners telephoned the ISTHA number a number of times for five days but received a busy signal.

The Kushners filed this lawsuit on April 15, 2008. Two days later, the Kushners' attorney wrote to ISTHA requesting a hearing. Defs. Exh. C. On April 21, 2008, ISTHA responded with available hearing dates and explained a hearing was unnecessary because the Kushners merely needed to register their car with their I-Pass. Am. Compl. ¶ 16; Defs. Exh. D. The Kushners updated their I-Pass car registration, and the ISTHA dropped the toll violation charge. Defs. Exhs. E and F.

Goodrum received similar notices of toll violations. Am. Compl. ¶ 17; Defs. Exhs. G and I. She telephoned the ISTHA a number of times, but also only received a busy signal. Within the

2

21-day time period to request a hearing, her attorney made a written request to the ISTHA for a hearing, was provided hearing dates, and scheduled a hearing. Defs. Exhs. J and K. Goodrum received a hearing and was found liable for 36 toll violations. Defs. Exh. N.

The ISTHA recorded 85,000 daily toll violations yet failed to send any toll violation notices from September 2006 to Fall 2007. At that point, ISTHA attempted to rectify the backlog and started issuing 1,000 notices a day. The notices are the same form sent to the Kushners and Goodrum. Many notices are erroneous because ISTHA cameras misread license plates about 25% of the time; customers did not use the I-Pass in cars registered to their accounts; ISTHA failed to link the I-Pass to the registered credit or debit card; or I-Passes are defective or have dead batteries. Because of the delay between the alleged violations and the notices, many recipients were unable to verify the legitimacy of the toll violation charges. Many recipients could not reach ISTHA through the telephone number provided in the notices because the number was overwhelmed with callers.

Plaintiffs propose certification of two classes: all persons issued a toll violation notice that provides only a telephone number as a means of contacting ISTHA, and all persons who have an I-Pass and use the Illinois tollway system.

## DISCUSSION

### I. Legal Standards

A motion to dismiss may challenge the complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, all well-pleaded allegations are accepted as true, and all reasonable inferences are drawn in plaintiffs' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The complaint

need only provide a short and plain statement giving defendants fair notice of the nature and basis of the claim. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007); *Tamayo*, 526 F.3d at 1081; Fed. R. Civ. P. 8(a)(2). This requires more than labels and conclusions, or a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp.*, 127 S. Ct. at 1964-65. Factual allegations must be sufficient to state a claim to relief that is plausible on its face, rather than merely speculative. *Id.* at 1965, 1974; *Tamayo*, 526 F.3d at 1083.

A motion to dismiss may also challenge subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). All well-pleaded allegations are accepted as true, and all reasonable inferences are drawn in plaintiffs' favor. *St. John's United Church of Christ*, 502 F.3d at 625. Unlike Rule 12(b)(6) motions, a Rule 12(b)(1) motion may rely on evidence beyond the jurisdictional allegations of the complaint. *Id.*

## II.   Lack of Standing

Defendants argue the amended complaint should be dismissed for lack of jurisdiction because plaintiffs fail to establish standing. In their response, plaintiffs state Goodrum settled with defendants, and their opposition to the motion to dismiss therefore applies only to the Kushners. Pls. Opp. Mem. n.1. This is poor practice for voluntarily dismissing a named plaintiff from a class action complaint. Nevertheless, because Goodrum has abandoned her claims, her claims are dismissed with prejudice.

The Constitution limits the jurisdiction of federal courts to cases and controversies. U.S. Const., art. III, § 1; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). The doctrine of standing is an essential component of the case-or-controversy requirement. *Lujan*, 504 U.S. at

4

560. It embraces limits on the exercise of federal jurisdiction, including the prohibition on adjudication of generalized grievances more appropriately addressed in the representative branches. *Allen v. Wright*, 468 U.S. 737, 751 (1984). The party invoking federal jurisdiction has the burden of establishing standing. *Lujan*, 504 U.S. at 561; *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). The constitutional minimum of standing requires an injury in fact, a causal relationship between the injury and the challenged conduct, and a likelihood the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61; *Lee*, 330 F.3d at 468. The injury-in-fact component requires an invasion of a legally protected interest that is concrete, particularized, and actual or imminent. *Lujan*, 504 U.S. at 560.

The standing inquiry requires cautious examination of a complaint's allegations to ascertain whether the injury is too abstract or otherwise not appropriate to be judicially cognizable. *Allen*, 468 U.S. at 752. Federal courts may exercise jurisdiction when the dispute is one traditionally considered capable of resolution though the judicial process. *Id.* For instance, an "abstract psychic harm" or an "one-day-I'll-be-hurt" allegation is insufficient to establish standing. *Mainstreet Organization of Realtors v. Calumet City*, 505 F.3d 742, 745 (7th Cir. 2007). There must be a nonnegligible, nontheoretical, probability of harm that would be corrected if plaintiffs are successful. *Id.* at 744.

The Kushners' claimed injury is subjection to a five-day busy signal when telephoning ISTHA to request a hearing on their toll violation notice. While no doubt annoying, this limited inconvenience does not constitute a concrete injury in fact. There is no legally protected interest in freedom from administrative inconvenience. This is an unfortunate reality of daily life. The

Kushners' subjective displeasure with ISTHA's busy signal for five days is precisely the kind of psychic harm inappropriate for judicial review and insufficient to create standing.

The Kushners do not claim injury from lack of a hearing. Nor could they. Within the time remaining to request a hearing, the Kushners learned they did not need a hearing because they merely needed to register their car with their I-Pass. Defs. Exh. D. They updated their registration, and ISTHA dismissed the charge. Defs. Exhs. E and F. The Kushners paid no fines and suffered no loss of driving privileges. Defs. Exh. F. The Kushners nevertheless argue they were injured because they were required to hire an attorney to circumvent the telephone procedure ISTHA provides in the notice. The Kushners' perceived need for an attorney is not a cognizable injury. After unsuccessfully attempting to reach ISTHA by telephone for five days, the Kushners filed this case. Two days later, the Kushners' attorney, the same attorney who filed the lawsuit, wrote to ISTHA requesting a hearing. At this point, the 21-day time limit to request a hearing by telephone had not expired. The Kushners' decision to hire an attorney and sue are not cognizable injuries that give them standing.

The Kushners claim they face a probable threat of future injury because they remain regular tollway users, and, given the ISTHA's error rate in assessing toll violations, they could receive future toll violation notices providing the same telephone number to request a hearing. They rely upon *Hoover v. Wagner*, 47 F.3d 845 (7th Cir. 1995), for the proposition that a plaintiff need only show a reasonable probability, not a certainty, of injury to establish standing. In *Hoover*, a state judge enjoined certain individuals, and those acting in concert with them or having notice of the injunction, from protesting and counseling near abortion clinics. *Id.* at 846. Anti-abortion activists sued the judge and the chief of police under 42 U.S.C. § 1983, alleging a

violation of their first amendment rights because they had been threatened with arrest, arrested, and prosecuted for violating the injunction when seen near abortion clinics being picketed by the defendants named in the injunction. *Id.* at 847. Under these facts, the probability of arrest, prosecution, conviction, or abandoning the right to free speech to avoid these harms was sufficient to establish standing to challenge the injunction. *Id.* at 847-48.

Unlike the *Hoover* plaintiffs, the Kushners have not demonstrated a probability of future injury. The Kushners have updated their I-Pass registration and do not face an imminent threat of additional toll violation charges on this basis. Defs. Exhs. E and F. An allegation that plaintiffs may be impacted by ISTHA's alleged general error rate sometime in the future is nothing more than a one-day-*maybe*-I'll-be-hurt allegation. A speculative threat of future injury repeatedly has been held insufficient to invoke article III standing. *See, e.g., Lujan*, 504 U.S. at 564 (environmental group members' intention to observe endangered species insufficient to establish actual or imminent injury); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (police department's routine application of illegal choke holds and subjection of plaintiff to one did not establish real and immediate threat plaintiff would again be stopped for an offense and put in a choke hold).

And the Kushners did not suffer an injury in the first instance. The inconvenience of receiving a busy signal for five days is not a legally cognizable injury. Even if there were a probability of receiving a toll violation notice with the same telephone number, this again would not establish an injury in fact.

The amended complaint must be dismissed for lack of jurisdiction because plaintiffs lack standing. The court need not address other arguments for dismissal.

## CONCLUSION

Defendants' motion to dismiss the amended complaint is granted. Plaintiffs lack standing because they fail to plead an injury in fact.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

September 4, 2008